CHARLES HAMILTON, Appellant, v. S. G. HAMILTON AND
OTHERS, Appellees.

Judgments: *Res judicata:* · WILLS.  The determination on appeal in
1   an action by a devisee to have his title to property declared a
fee and for authority to mortgage the devised property, that the
devisee had only a life estate and that the question of whether a
power of sale annexed to the devise could be exercised without
authority from the court was not involved, is held not to have
been an adjudication precluding a construction of the will in a
subsequent action, so as to give the devisee unrestricted right to
sell or mortgage the property.

Wills: LIFE ESTATE: POWER OF SALE: *Bona fide* PURCHASER.  A life
2   estate may be created with a power of sale annexed authorizing
the life tenant to defeat the remainderman by an extinguishment
of the fee, or the testator may make the power of sale subject
to the order of court; but where the power of sale is unlimited
the court will not ordinarily impose any restriction not expressly
or clearly implied in the devise.  And where the devise of power
to the life tenant is limited to a sale or disposition to meet some
contingency which may possibly arise in the future, it has been
generally held that if the power of sale granted is general in its
terms and the determination of the right to sell involves an
exercise of judgment and discretion, the decision made in good
faith by the life tenant himself is final and conclusive; and a
purchaser, in the absence of collusion or notice of fraud on the
part of the life tenant, may rightfully assume that the sale is
made in the proper exercise of the life tenant's power.

Same.  The will in this case gave to the husband all of his wife's
3   estate for life, with full power to sell, transfer and dispose of
the same or so much thereof as may be needed from time to
time for his support and maintenance; and also made him sole
executor of the will.  *Held,* that he had power to dispose of the
estate for the purposes expressed in the will without an order of
court, and that the purchaser could rightfully assume that the
sale was made to him in the proper exercise of such power.

Same: POWER TO MORTGAGE.  Where a mere naked power to. sell is
4   given an agent, attorney or trustee of an ordinary trust, it does
not include power to mortgage; but where a testamentary power

of sale has been given, not for the benefit or profit of the donor but in furtherance of some benefit conferred upon the donee, the language creating such a power of sale is to be liberally construed to promote the purpose and intent of its creation, and if amplified by other words of broad or general meaning and the circumstances under which the gift is made are such as to permit that construction, authority to mortgage for the purpose expressed in the writing may be inferred.

**Same.** Where the power of sale is testamentary in character rules governing the construction of wills are applicable, and the intent of the donor is the central question. In the instant case the controlling purpose of the will was to assure the husband proper maintenance and support, and to that end power was given not only to sell but to transfer and dispose of the property, and the giving of a mortgage for such purpose is held a proper exercise of the power conferred by the will.

*Appeal from Story District Court.*—HON. R. M. WRIGHT, Judge.

SATURDAY, NOVEMBER 19, 1910.

THE opinion sufficiently states the case.—*Reversed.*

*McCarthy & Luke,* for appellant.

*Cummings & Mote,* and *U. S. Alderman,* for appellees.

WEAVER, J.—In the year 1899 Tennetta M. Hamilton, a resident of Story County, died testate, leaving surviving her Charles Hamilton, her husband, who is plaintiff herein, and several children, who are defendants and appellees. By the terms of the will, after providing for the payment of debts and funeral expenses out of the personal estate of the testatrix, the residue is disposed of in provisions reading as follows:

Second. All the rest, residue and remainder of my estate real, personal and mixed, of which I may die seized

or possessed, or to which I may be entitled, I will devise and bequeath to my beloved husband, Charles Hamilton, to have and to hold unto my said husband during his life with full power to sell, transfer and dispose of the same or as much thereof as may from time to time be needed for his support and maintenance during his said lifetime.

Third. I further direct that after the decease of my said husband, Charles Hamilton, all the then remaining property of my estate, both real, personal and mixed, shall revert to and is hereby given, devised and bequeathed to my children, equally, share and share alike.

Fourth. I hereby appoint my beloved husband, Charles Hamilton, of the county and state named, my sole executor of this my last will and testament and hereby exonerate him from giving bonds for the faithful discharge of his duties as such executor.

This will was duly probated, and its validity, when rightly interpreted, is admitted by all parties. At the time of her death, Mrs. Hamilton held the legal title to the family homestead, consisting of three lots in the city of Ames on one of which the residence building is situated. This property included the bulk of her estate. After the probate of the will, plaintiff, believing that its effect was to vest him with a fee simple to said real estate, brought an action in equity to have his title so declared and quieted. To that proceeding his children were made defendants, and they appeared and contested his claim. In the same proceeding, by way of amendment to his petition, plaintiff alleged the need of funds to pay off incumbrances on the property and to make necessary repairs on the same, and asked an order allowing him to mortgage the property for that purpose. On trial the district court dismissed the bill, holding that the will gave to plaintiff a life estate only, and that no showing was made of any need for a sale of the property for his support. From that decree an appeal was taken to this court, and the decree affirmed, as appears by the opinion in *Hamilton v. Hamilton*, 140 Iowa, 282. After the original opinion therein had been filed, a peti-

tion for rehearing was presented, asking the court to consider whether under the power annexed to the life estate the plaintiff was not the sole judge of his needs, and that whenever he in good faith determined that his reasonable maintenance and support required it he could sell or dispose of the property in whole · or in part without first obtaining authority from the court. Thereupon a supplemental opinion was filed (140 Iowa, 285), holding that the question thus presented was not involved in the issues and had not been ruled upon by the trial court and was not adjudicated in the former opinion. After the termination of that proceeding, plaintiff instituted the action now at bar, setting up the provisions of the will, alleging that controversy had arisen between him and his remaindermen as to the extent of the power conferred upon him by said devise, and asking that the same be construed by the court as giving him the unrestricted right to mortgage or sell the property. Answering the petition, the defendants deny that the power of sale given the plaintiff by the will of his late wife can be exercised at his uncontrolled judgment or discretion, and allege that the question thus presented was decided and adjudicated against such claim in the former action. The trial court found for the defendants upon both defenses pleaded and dismissed the bill. Plaintiff appeals.

I. We are of the opinion that the plea of former adjudication can not be sustained. Whether the pleadings in the former case did or did not present the issue now before us is not an open question. It was
1. JUDGMENTS: *res judicata*: wills. there decided and announced by us that the issue was not involved in that proceeding. To show that such was the decision, we have only to quote the closing sentence of the supplemental opinion, which reads as follows: "It is enough to say that the power of the life tenant under the terms of this devise to sell and convey the fee without order from the court was not raised

by the pleadings, and there is nothing in the decree entered by the court below nor in the opinion heretofore filed in this court which attempts to settle or adjudicate that question." That decision, we think, must be held conclusive against the plea of *res adjudicata,* and that the plaintiff is entitled to be heard upon the merits of his claim concerning the interpretation of the will in this action unaffected by the former decree.

II.    That a life estate may be created with power annexed authorizing the life tenant to defeat or extinguish the remainder over by sale and conveyance of the fee is too well settled in this state and in most of the states to admit of serious argument. *Webb v. Webb,* 130 Iowa, 457; *Wenger v. Thompson,* 128 Iowa, 750; *Podaril v. Clark,* 118 Iowa, 264; *Spaan v. Anderson,* 115 Iowa, 121. It is, of course, equally true that the grantor or testator may, if he so elect, make the exercise of the power subject to the order or approval of the court or any other restriction which he sees fit to impose, and a sale or conveyance in disregard thereof will be void as against the remaindermen. As, however, it is competent for the grantor or testator to make the power full and unlimited, the court will not ordinarily impose any restriction or assume any control over its exercise which is not expressed or clearly implied in the grant or devise by which it is created. It not infrequently happens, as in the present case, that the grant or devise of power to the life tenant is limited to a sale or other disposition to meet some contingency which may or may not arise in the future. The question who is to determine when the contingency so provided against has arisen, thus maturing the power to convey, is one which has quite frequently occupied the attention of the courts, and in the great majority of cases it is held that if the grant of power be otherwise full or general in its terms, and the determination of the question is one which involves the exercise

*2. WILLS: life estate: power of sale: bona fide purchaser.*

of judgment and discretion, the decision made in good faith by the life tenant himself is final and conclusive. For example, in *Richardson v. Richardson,* 80 Me. 585 (16 Atl. 250), the court construes a will by which the testator gave the residue of his estate to his wife for life with power to "dispose of for her maintenance." Acting under this power, the widow did convey the homestead in consideration for a life support. The heirs contested her right to make the conveyance, and the court says:

The first question is whether the transaction of deed and bond, the grantee surviving the grantor, was valid or void. If the parties acted in good faith—and such must be the presumption—we think it must be pronounced valid. A power to thus convey was conferred on the wife by the will. The mode and manner is not dictated to her. The purpose for which it may be done is indicated. She could dispose of a portion or all. Nothing restricts her as to the quantum of interest to be disposed of. The testator does not provide a remainder, but only disposes of one should it exist. . . . Her judgment governs, even though she exercises poor judgment. All rests in her own discretion. Counsel for remaindermen raises objections to such an execution of the trust; but the objections apply more against such a kind of a trust than against its mode of execution. They were objections for the testator to have listened to. He did consider presumably the same objections and in his own mind overruled them. He requires no bond. He creates no trustee. He places all confidence in her, having all opportunities to judge of her capacities both mental and moral. It is said she should and could sell only as her wants from time to time required. That might be the judgment of some persons; but it was not her judgment, and her judgment governs. Again, the court says: It is said a fraud might easily be committed upon the remaindermen in such a transaction. The question of law is whether it was *per se* fraudulent. If the transaction were a fraudulent one, both parties participating in the fraud, it could undoubtedly be avoided by other parties interested. . . . It is also intimated by counsel that, to defend any sale by a life tenant who has

a power of disposal like this, it must appear that there was an emergency requiring a sale. That is impossible. If such were the case, no man would buy at a fair price the whole or any part of the property. It would so cripple the practical use of the power to sell as to make it in very many cases worthless to the possessor.

In *Matthews v. Capshaw,* 109 Tenn. 480 (72 S. W. 964, 97 Am. St. Rep. 854), the testator gave his wife a life estate with a provision authorizing her to sell "in case of necessity." She conveyed away certain of the real estate, and the remaindermen brought suit to have the sale declared void as to them. In its opinion the court thus treats of the question we now have under consideration:

The general rule of law undoubtedly is that where special power of sale is given to be exercised only upon the happening of a certain event, made a condition precedent, it can be executed only in the mode, at the time, and upon the condition prescribed in the instrument creating it, and the purchaser must at his peril ascertain whether the contingency upon which a sale is authorized exists. . . . But this rule only applies where the condition upon which the power is to be exercised is upon the happening of a certain event or independent fact, such as the majority or marriage of some one named, which may be ascertained by anyone with equal certainty. It does not apply, and is not the law, where the condition is such that the determination, whether it has been fulfilled or not, requires the exercise of judgment or discretion as to which there may be an honest difference of opinion; and in cases of this character the decision of the donee of the power is conclusive of the question, and a sale made in pursuance of the power, in good faith or without notice, to innocent purchasers, will not be set aside, although it may afterward appear that the judgment of the donee was erroneous. The distinction is well established by the authorities. . . . Powers of sale given in a will should receive liberal construction in order to carry into effect the intent and purpose of the testator. To place any other construction upon this will than we have given it would clearly defeat

the plain intent of the testator. . . . If the necessity of sale was not to be determined by Mrs. Matthews, then it could only be ascertained by resort to the courts, with attendant expense and delay, which it was intended to provide against. If the testator had intended that the power should only be exercised when a necessity should be judicially determined to exist, he would have so said.

Without prolonging this opinion for further quotation, we cite the following cases as sustaining the same principle: *Jennings v. Teague,* 14 S. C. 238; *Wenger v. Thompson,* 128 Iowa, 750; *Paxton v. Bond* (Ky.) 15 S. W. 875; *Reed v. Reed,* 80 Conn. 401 (68 Atl. 849); *Bartlett v. Buckland,* 78 Conn. 517 (63 Atl. 350); *Griffin v. Nicholas,* 224 Mo. 275 (123 S. W. 1063); *Haseltine v. Shepherd,* 99 Me. 495 (59 Atl. 1025); *Trout v. Rominger,* 198 Pa. 91 (47 Atl. 960); Perry on Trusts (1st Ed.) section 511; *Crozier v. Hoyt,* 97 Ill. 23. Indeed, we have found no authority holding that, under a power like the one in the will now before us, leave or order of court is essential to a valid sale and conveyance by the life tenant. There are cases, no doubt, where conveyances so made have been held invalid, because of fraud or collusion; but the decisions are in practical accord that when made in good faith they will be sustained and enforced.

The rule as above stated appears to us as being eminently sound, and we give it our adherence. There is nothing in the will of Mrs. Hamilton to indicate an intent to make the power of sale given to her hus-

3. SAME.        band an exception to this rule. On the contrary, it was her manifest purpose to make his support and comfort the matter of first consideration. She gives him the use and enjoyment of substantially all her little estate for life, and clothes him with "full power" to sell, transfer, and dispose of the same, or as much thereof as may from time to time be needed for his support and maintenance. She also makes him executor of the will

without bond. Every part of the instrument indicates her purpose to devote her estate to the use and support of her husband and her confidence that he will properly execute the trust reposed in him, and that the interest of her children therein should be limited to only that part which might remain unexpended for his maintenance and support to the time of his death. To rule that he can get no benefit from the power devised by the will except as he goes into court and wins it at the end of a lawsuit with his children is to rob that provision of all material value to him, and to defeat the clear intent of the testatrix in making it. A power thus hampered is not a "full power." The only limitation imposed upon the gift pertains to the purpose for which a sale may be made; but, the occasion for the exercise of the power being once determined, the right to sell and dispose of all the title the testatrix had is unlimited. While the interest of the children in this property is not technically a "contingent remainder," it is nevertheless burdened from its very inception with the superior right of their father to diminish or extinguish it entirely if, in the exercise of good faith, believing it necessary for his reasonable support and maintenance, he shall convey the fee. This gives him no license to sell the property and dispose of the proceeds merely to defeat the remaindermen. Such a sale would be tainted with fraud on his part, and if the purchaser colludes in the fraudulent purpose, or takes the title with notice thereof, it will be open to a court of equity to remedy the wrong. But, in the absence of collusion or notice, the purchaser may rightfully assume that the sale is made to him in the proper exercise of the power conferred by the will, and his purchase will be protected accordingly.

Question is further raised whether, under the power given by the will, the plaintiff may mortgage the property. That a mere naked power to sell given to an agent or attorney or to the trustee of any ordinary trust does not

include the power to mortgage is well settled by the weight
of authority.   In such case the power is to
be strictly construed and will not be ex-
tended to cover an act not clearly within the terms of the
instrument by which it was created; but a different rule
has often been applied where a testamentary power has
been given, not for the benefit or profit of the donor, but
in the furtherance of some benefit which the donor confers
upon the donee.   The language creating such a power is
to be liberally construed to promote the purpose or intent
of its creation, and, if the power to sell is amplified by
other words of broader or more general meaning, and the
circumstances under which the gift is made be not such
as to forbid that construction, the authority to mortgage
for the purpose expressed in the writing may be inferred.
*Kent v. Morrison,* 153 Mass. 137 (26 N. E. 427, 10 L.
R. A. 756, 25 Am. St. Rep. 616); *Faulk v. Dashiell,* 62
Tex. 642 (50 Am. Rep. 542); *Hamilton v. Ins. Co.,* 3
Tenn. Ch. 124; *Gordon v. Preston,* 1 Watts (Pa.) 386
(26 Am. Dec. 75); *Jackson v. Everett* (Tenn.) 58 S. W.
340; *Steifel v. Clark,* 9 Baxt. (Tenn.) 466; *Grace v. Perry,*
197 Mo. 550 (95 S. W. 875); *Funkhouser v. Porter,* 32
Ky. Law Rep. 676 (107 S. W. 202); *Bailie v. Kinchley,*
52 Ga. 487; *Harbison v. James,* 90 Mo. 411 (2 S. W.
292); *Lardner v. Williams,* 98 Wis. 514 (74 N. W. 346);
*McCreary v. Bomberger,* 151 Pa. 323 (24 Atl. 1066, 31
Am. St. Rep. 760); *Campbell v. Low,* 9 Barb. (N. Y.)
585; *Oxford v. Albemarle,* 15 Jur. 811.

Where the power is testamentary in character, the
rules governing the construction of wills are to be applied.
The intent of the testator is the central question, and its
answer is to be found by reading the entire
instrument, keeping in view the circum-
stances under which it was made and the purpose or end
which the power was created to serve.   Here, as we have
already said, the primary and controlling purpose of the

*4. SAME: power to mortgage.*

*5. SAME.*

will is seen to be the assurance to the husband of proper maintenance and support. To that end power is given to him not only to "sell" but to "transfer" and "dispose of" the property devised. Ordinarily, a mortgage to meet pressing needs would be less inimical to the interests of the remainderman than an absolute conveyance. Its practical effect may be to preserve the life tenant a home and at the same time contribute to his support and maintenance to which the entire estate of the deceased is devoted by the will. The giving of a mortgage for such purpose should in our judgment be upheld by the court as a proper execution of the power conferred by the will.

As the record incidentially discloses the fact that the devised real estate is already incumbered by an outstanding mortgage, and its payment or renewal may become essential to the preservation of the home as well as for the other beneficial uses provided for in the will, there can be no reasonable doubt of the authority of the plaintiff to make such renewal.

We have discussed this case much more minutely than would be called for under ordinary circumstances, in the hope of putting an end to unprofitable litigation between parent and children over property of comparatively unimportant value.

For the reasons hereinbefore stated, the decree of the district court is reversed. Decree will be entered in this court, if the appellant so elect, within thirty days from the filing of this opinion; otherwise, the cause will be remanded to the trial court for decree in harmony with the views herein expressed.—*Reversed.*

EVANS, J., took no part.