W. H. EMERY, JR., *et al.* Defendants in Error, *vs.* MARY ALLEN EMERY *et al.*—(MUNSON A. EMERY *et al.* Plaintiffs in Error.)

*Opinion filed April 20, 1927.*

1. WILLS—*when trustee takes title under devise.* A devise of real estate to a trustee to sell and apply the proceeds to specified purposes conveys the title to the land to the trustee, as in such case the vesting of the title is necessary to enable the trustee to perform the duties of the trust.

2. SAME—*what is not a passive trust—Statute of Uses.* A devise to trustees giving them full discretion in the management and improvement of the property, with power of sale if necessary, and with directions to pay over all receipts, income and profits semi-annually to certain persons named in the will and at the end of a certain period to deed the property to persons named, creates active duties inconsistent with a passive trust, and the legal estate devised to the trustees is not executed in the beneficiaries by the Statute of Uses.

3. SAME—*when devise over to children of deceased devisee refers to death in lifetime of testatrix.* Where a will directs that at the end of a certain period trustees who were given the legal title shall deed the property to the testatrix's children "and to each of my grandchildren then living, who may be the children of any of my children who were deceased at the time of my death," children of a child who died after the death of the testatrix but before the period of distribution are not included in the devise, notwithstanding the will provides that if at the time of distribution "there be living any of the surviving children of any of my deceased children" the period of distribution as to them shall be postponed until the youngest is twenty-one years old, all the other references to the testatrix's deceased children being clearly intended to include only those who predeceased the testatrix.

4. SAME—*intention to execute power must clearly appear.* The donee of a power may execute it without referring to it and the intention need not appear on the face of the instrument where the intention to execute the power appears, whether directly or indirectly, positively or by just inference; but the burden of proof is on the party claiming by reason of the execution of the power, and, however manifested, the intention to execute the power must be so apparent and clear that the transaction is not fairly susceptible of any other interpretation.

5. SAME—*when a will is not an execution of a power.* A will which consists of a general devise of all the testator's property without referring to a power of appointment given the testator as devisee under another will, and which does not mention the property affected by the power, will not constitute an execution of the power, where there is no evidence that the will would be inoperative without the aid of the power and no circumstance indicating the intention to execute the power.

6. SAME—*shares of devisees referred to as "heirs" are determined by the Statute of Descent.* The word "heirs," when uncontrolled by the context, designates the persons appointed by law to succeed to the estate in cases of intestacy, and where a devise is made to a class of persons not named, as to the heirs-at-law of the testator, so that the Statute of Descent must be invoked to ascertain the persons who take, the provisions of the statute as to the quantity each shall take must also be observed.

7. DESCENT—*widow with children was not an heir prior to the amendment of 1923.* Under section 1 of the Statute of Descent prior to its amendment in 1923 a widow, where there were children, was not an heir, but the property descended to the children in equal parts, subject to the widow's right of dower.

HEARD, J., dissenting.

WRIT OF ERROR to the Circuit Court of DuPage county; the Hon. MAZZINI SLUSSER, Judge, presiding.

JOHN W. LEEDLE, for plaintiffs in error.

WILLIAM SHERMAN CARSON, for defendants in error W. H. Emery, Jr., *et al.* surviving trustees.

CHARLES W. HADLEY, and CHARLES S. WILLISTON, for defendant in error Mary Allen Emery.

Mr. JUSTICE DUNN delivered the opinion of the court:

W. H. Emery, Jr., and Albert I. Ullmann, as surviving trustees under the will of Mary A. Emery, deceased, filed a bill in the circuit court of DuPage county praying the court to construe the will of the testatrix and to instruct the trustees in regard to their duties. Answers having been filed, the cause was heard and the court entered a decree construing the will and instructing the trustees, to review

which the children of John T. Emery, who was one of the beneficiaries named in the will, have sued out a writ of error.

Mary A. Emery executed her will on December 14, 1905, and died on May 12, 1918, leaving John T. Emery, Ida Adelia Ullmann, W. H. Emery, Jr., and Grace Emery, her children, her only heirs. Her will was admitted to probate, and by it she devised and bequeathed all her property, real and personal, amounting to more than $200,000, to John T. Emery, W. H. Emery, Jr., and Albert I. Ullmann, trustees, for the uses and purposes specified in the will. They were directed to pay all her debts, and if her daughter Grace should be unmarried at the time of the testatrix's death, to convey to her by warranty deed the homestead property in the village of Elmhurst and to convey to her by proper bill of sale all household furniture located in the house. As soon as convenient without detriment to the estate the trustees were directed to divide all the personal property into four equal parts and pay one of such parts to each of her four children who might survive the testatrix. The will, after providing for the authority of the trustees in the management of the estate, continued:

"I direct that one equal one-quarter portion of the proceeds, incomes and profits from the real estate as aforesaid shall semi-annually on the days specified be paid over to each of my said four children, John T. Emery, Ida Adelia Ullmann, W. H. Emery, Jr., and Grace Emery, who may survive me, or to their heirs, or to such persons as such surviving children shall appoint by will. If any of my children shall have died before me and do not leave any surviving children, who are alive at my death, then the one-quarter equal share of my property which would have been paid to him if he had survived, shall be added to and divided equally among the other one-quarter parts. * * *

"I hereby direct that on the first day of January, A. D. 1925, my trustees shall deed the real estate which they by that time may not have sold, to the persons who under this

will at that time would be entitled to the proceeds of the sale of the real estate at the then semi-annual accounting; provided, however, that if at such time there be living any of the surviving children of any of my deceased children, my trustees shall continue to discharge their trust as to such children until the youngest of such children who were living at the time of my decease shall have arrived at the age of twenty-one years, when my trustees shall then pay over, share and share alike, to each of my grandchildren then living, who may be the children of any of my children, who were deceased at the time of my death, an equal portion of the personal and real property so held in trust for them and all accumulations of all such personal and real property as shall have been held in trust for them. Any posthumous children of any of my deceased children who may be living at the date of the final distribution of the trust estate so created for the children of my deceased children shall share equally with their brothers and sisters under this provision." * * *

John T. Emery, W. H. Emery, Jr., and Albert I. Ullmann, were nominated executors of the will. They accepted the trust, administered the estate and their final report as executors was approved by the county court, upon which all the assets of the estate remaining in the hands of the executors, except such as were specifically devised, were delivered to the complainants and John T. Emery as trustees under the provisions of the will, and the executors were discharged. Thereafter the trustees managed the trust estate in accordance with the terms of the will until December 25, 1921, when John T. Emery died, leaving his widow, Mary Allen Emery, surviving, and his children, Munson A. Emery, John T. Emery, Jr., William Harrison Emery, Howard P. Emery and Robert B. Emery, his only heirs. His will, executed on May 3, 1920, was admitted to probate, and, except the formal commencement and conclusion, the direction to pay debts and the

nomination of his wife as executrix, was in the following words:

"I give, devise and bequeath all the rest and residue of my estate, wheresoever the same may be situated, and of all kind, nature and description, and including real, personal and mixed, to my wife, Mary Allen Emery, and request that she make provision for the education and care of my five sons, Munson A. Emery, John T. Emery, Jr., William Harrison Emery, Howard P. Emery and Robert B. Emery, and as they are all minors and I have full faith and confidence in my wife I make no especial bequest for the five sons above named."

The personal property of the estate of Mary A. Emery was disposed of by the executors in accordance with the provisions of her will. No question arises about it. The payment of income and proceeds of the real estate was made to the four children, as directed by the will, during the life of John T. Emery. Since his death the complainants, as surviving trustees, have continued to manage and control the estate and have made distribution of the income and receipts, three-fourths to Ida Adelia Ullmann, W. H. Emery, Jr., and Grace Emery, and one-fourth to Mary Allen Emery, the widow of John T. Emery and the sole devisee under his will. The bill was filed on December 31, 1924, the day before that appointed by the will for the final distribution under her will. The one-fourth of the income and proceeds and one-fourth of the lands which have not been sold by the trustees constitute the subject matter of this suit.

The two wills were introduced in evidence on the hearing and no other evidence was offered. The only questions upon which the complainants asked instruction were: (1) Was the will of John T. Emery an exercise of the power of appointment conferred by the will of Mary A. Emery? (2) Did the language of the will of Mary A. Emery in the directions as to the final distribution of the trust estate on

January 1, 1925, to "the surviving children of any of my deceased children," refer only to the children of any of her children who were deceased at the time of her death?

The respective contentions of the parties are as follows: (1) On behalf of Mary Allen Emery, executrix of the will of John T. Emery, it is contended that the trustees under the will of Mary A. Emery took only a passive or naked trust so far as her surviving children were concerned, and the legal title vested at once on her death in her surviving children by virtue of the Statute of Uses; that John T. Emery thus became vested with an undivided one-fourth interest in all her property, and had power to dispose of that interest by will without reference to the power in the will of Mary A. Emery but subject to the rights of his creditors; that he did not intend to exercise the power given him by the will of Mary A. Emery, but did devise the property directly as his own property and not by appointment, and that it is subject to the debts of John T. Emery.

(2) There is a controversy between the plaintiffs in error, the children of John T. Emery, on the one hand, and their mother, Mary Allen Emery, his widow, on the other, the latter claiming that by his will John T. Emery exercised the power of appointment given him by the will of Mary A. Emery, and by virtue of such appointment Mary Allen Emery is now entitled to a conveyance of an undivided fourth of the lands still unsold; that the words "the surviving children of any of my deceased children," in the proviso in the sentence of the will directing the conveyance of the unsold real estate on January 1, 1925, refer to the surviving children of any of the testatrix's children who were deceased at the time of her death, while the plaintiffs in error claim that there was no exercise of John T. Emery's power of appointment; that the "surviving" children referred to are surviving children of any of the testatrix's children who were deceased on January 1, 1925; that the trustees were required to convey one-fourth interest in all

unsold real estate on January 1, 1925, and to pay over one-fourth of all the proceeds, income and profits subsequent to the death of John T. Emery to his heirs, who were his widow, Mary Allen Emery, and his five sons, the plaintiffs in error.

(3) The trustees contend that the decree of the circuit court was right in all respects; that the words "the surviving children of any of my deceased children," in the will of Mary A. Emery, meant only the children of any of her children who were deceased at the time of her death; that the power of appointment was exercised by John T. Emery by his will, and that his heirs are his five sons and his widow.

The argument in behalf of Mary Allen Emery, executrix of the will of John T. Emery, is based upon the hypothesis that the trust created by the will of Mary A. Emery was a passive trust, which was executed by the Statute of Uses, and that no legal estate existed in the trustees. This hypothesis is without foundation. The language of the will is sufficient to convey the fee. It purports to devise the entire estate of the testatrix. A devise of real estate to a trustee to sell and apply the proceeds to specified purposes conveys the title to the land. (Tiffany on Real Prop. sec. 106.) While the rule is that the estate of the trustee is limited to such title as will enable him to perform the duties of the trust, if he is given power to sell and convey in fee simple he necessarily takes a legal title in fee simple to enable him to give title to the grantee. When the trustee is required to convey the land to the object of the settlor's bounty the fee must vest in him. *Spengler* v. *Kuhn,* 212 Ill. 186; *Lawrence* v. *Lawrence,* 181 id. 248; *West* v. *Fitz,* 109 id. 425; *Preachers' Aid Society* v. *England,* 106 id. 125; *Kirkland* v. *Cox,* 94 id. 400; *McFall* v. *Kirkpatrick,* 236 id. 281; *Gardner* v. *Baxter,* 293 id. 547.

The will gave the trustees full power to sell and dispose of all the testatrix's real estate at such times and on such

terms as they should deem meet, to execute conveyances, to manage and improve the real estate as should seem best to them, and to do all things in and about the management of the estate in the same manner as the testatrix might do if living and as should seem expedient, just and satisfactory to enable them to carry out the purposes and intentions of the will. They were required to make semi-annual accountings and pay over all receipts, income and profits to the persons entitled thereto, except so much of such proceeds, income and profits as they should determine should be retained for the conservative management and improvement of the real property, which discretion as to the amount to be retained was not to be questioned in any manner, and on January 1, 1925, the trustees were required to deed the real estate which they had not sold, to the persons who under the will at that time would be entitled to the proceeds of the sale of the real estate at the then semi-annual accounting. These were active duties inconsistent with a passive trust, and the legal estate devised to the trustees was not executed in the beneficiaries by the Statute of Uses. (*Meacham* v. *Steele,* 93 Ill. 135; *Kellogg* v. *Hale,* 108 id. 164; *Ure* v. *Ure,* 185 id. 216; *Moll* v. *Gardner,* 214 id. 248; *Chicago Terminal Transfer Co.* v. *Winslow,* 216 id. 166; *Johnson* v. *Lee,* 228 id. 167; *Matthern* v. *Rankin,* id. 318; *Masters* v. *Mayes,* 246 id. 506.) The only interest which John T. Emery took under the will was the right to receive one-fourth of the proceeds, income and profits from the real estate semi-annually on the first days of January and July during his life and that his right upon his death should pass to his heirs or to such persons as he should appoint by will.

Distribution of the proceeds, income and profits of the real estate was directed to be made semi-annually, in the alternative, one-fourth to John T. Emery or his heirs or to such persons as he should appoint by will, and one-fourth to each of the other beneficiaries. A conveyance of the

real estate was directed to be made on January 1, 1925, by the trustees to the persons who should be entitled at that time to the proceeds of the sale of the real estate at the semi-annual accounting on that day. To this direction was attached a proviso that if at that time any surviving children of any of the testatrix's deceased children should be living, the trustees should continue to discharge their trust as to such children until the youngest of such children who were living at the testatrix's decease should arrive at the age of twenty-one years, and should then "pay over, share and share alike, to each of my grandchildren then living, who may be the children of any of my children, who were deceased at the time of my death," the portion of the property so held in trust for them and its accumulations. This provision for the extension of the trust during the minority of the testatrix's youngest surviving grandchild refers only to children of her children who had died in her lifetime. In other parts of the will the testatrix has referred to surviving children of her deceased children, and the reference is always to surviving children of her children who had died in the testatrix's lifetime. The whole scheme of her will contemplated the gift of her property to her four children equally, if they were all living at her death, and if any had died then to those surviving, provided that if those dying had left children who were surviving at the testatrix's death, such surviving grandchildren of the testatrix should be substituted for the parent or parents in the distribution of her estate. The words "surviving children of any of my deceased children," in the connection in which they occur in reference to the conveyance of the unsold residue of the real estate, considered alone, might seem of doubtful meaning as to the date of the death of the "deceased children," but a consideration of the remainder of the proviso explains the ambiguity and makes the meaning perfectly clear. If the words referred to deceased children of the testatrix dying at any time, whether before or after

her death, then if one of her children had died before and another after her death, both leaving children, the trust would continue until the youngest of such grandchildren who were living at the testatrix's death should reach the age of twenty-one years, and the will provides that the trustees should then pay over, share and share alike, to each of the grandchildren then living who were the children of any of the testatrix's children who died in her lifetime, an equal portion of the personal and real property so held in trust for them and its accumulations, but makes no provision whatever for the payment to any grandchild then living who was the child of any child of the testatrix who survived the testatrix and died afterward. This would be absurd and makes it manifest that the testatrix did not have in mind a condition which would not exist until after her death but disposed of her property with reference to actual or possible conditions at her death, providing for her own children and for their children if her children died in her lifetime, but leaving her children, if they outlived her, to provide for their own children as they saw fit out of the property which she left at their disposition.

The will of John T. Emery did not on its face purport to exercise the power given to him by the will of Mary A. Emery. It was not necessary that it should do so. If he intended to act under the power and executed the will for the purpose of exercising the power his act constituted an appointment, but to have that effect a certain ascertainment of his intention to act under the power is essential. It is not necessary that the intention appear on the face of the instrument itself. It may be manifested in other ways but it must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful under all the circumstances, then that doubt will prevent it from being deemed an execution of the power. (*Blagge* v. *Miles,* 1 Story, 426; *Lee* v. *Simpson,* 134 U. S. 572.) In *Funk* v. *Eggleston,* 92 Ill. 515, it is

said that the fundamental principle deducible from all the cases, from *Sir Edward Clere's case,* 6 Coke, 17, down, is that there should be a certain ascertainment of the intention of the donee of the power to act under it, and that three classes of cases have been held to be sufficient demonstrations of the intended execution of a power, and these are, where there is a reference in the instrument to the power, or a reference to the property included in the power, or the instrument would be inoperative without the aid of the power. The rule requiring the existence of one of these three elements was said, however, to be altogether subordinate and secondary in its character and must give way if the circumstances indicated clearly the intention of the donee to work by the power, and the primary rule would prevail, which requires only that the intention be made clear and manifest.

The will of John.T. Emery makes no reference to the power or to the property covered by it, and there is no evidence that it would be inoperative without the aid of the power. There is no evidence of the kind, condition or value of the property, if any, owned by the testator or passing under his will, and no circumstances appear which can be said to manifest clearly the intention of the testator to work by the power. The only language in the will beyond the words necessary to express the intention to devise all his estate to his wife, contains a request that she make provision for the education of the testator's five sons, and a statement that because of his full faith and confidence in his wife he makes no special bequest to his sons. An argument in favor of the exercise of the power is based on the language, "I give, devise and bequeath all the rest and residue of my estate, wheresoever the same may be situated, and of all kind, nature and description, and including real, personal and mixed, to my wife," etc. In the case of *Bilderback* v. *Boyce,* 14 S. C. 528, a father devised real estate to trustees to permit his son to take the income for life,

remainder to such persons as the son might appoint by will, and in default of appointment, to the son's children. The son devised and bequeathed "all the rest and residue of my estate, whatever and wherever," to persons named but did not mention the power or the trust property. He had other real estate of his own. The court recognized and adhered to the principle that the intention to execute the power must be apparent and clear so that the transaction is not fairly susceptible of any other interpretation, and held that there was no execution of the power because, though there was a general disposition in general terms of the testator's whole estate, the land covercd by the power was not mentioned, the power was not referred to, and the will was effective upon the property of the testator without including that covered by the power. While it is true that the donee of a power may execute it without referring to it, and where the intention to execute the power appears, whether directly or indirectly, positively or by just inference, the execution of the power will be sustained, it is also to be borne in mind that the burden of proof of the execution of the power is upon the party claiming by reason of it, and, however manifested, the intention must be so apparent and clear that the transaction is not fairly susceptible of any other interpretation. There is nothing here but a general devise of the testator's property, no reference to the power, no mention of the property affected by it, no evidence that the will would be inoperative without the aid of the power, and no circumstance indicating the intention of the donee to work by the power. The court erred in holding the will of John T. Emery to be an execution of the power of appointment conferred by Mary A. Emery's will.

The plaintiffs in error contend that if it is held that there has been no execution of the power and that the trustees should convey to the heirs of John T. Emery, then the five plaintiffs in error and their mother are the heirs and will

share equally in the property. The trustees in their brief say that if the power of appointment was not exercised the heirs are the five plaintiffs in error and Mary Allen Emery, their mother, and that the one-fourth interest in the trust estate should be divided among them in accordance with the provisions of the statute, as in cases of intestacy.

The word "heirs," when uncontrolled by the context, designates the persons appointed by law to succeed to the estate in cases of intestacy, and where a devise is made to a class of persons not named, as heirs-at-law of the testator, so that the statute must be invoked to ascertain the persons who take, its provisions as to the quantity each shall take must also be observed. (*Richards* v. *Miller,* 62 Ill. 417; *Kelley* v. *Vigas,* 112 id. 242.) A reference to section 1 of the Statute of Descent as it existed at the date of the death of John T. Emery, prior to its amendment in 1923, shows that estates of proprietors dying intestate or whose estates shall be deemed intestate shall descend and be distributed to his or her children in equal parts, subject to the widow's right of dower. The widow is therefore not an heir and was not entitled to a share of the trust estate.

The decree of the circuit court will be reversed and the cause remanded, with directions to enter a decree finding that the will of John T. Emery was not an execution of the power conferred by the will of Mary A. Emery; that the words, "if at such time there be living any of the surviving children of any of my deceased children," occurring in the will of Mary A. Emery in the direction to the trustees to deed the real estate which they may not have sold on the first day of January, 1925, refer only to the surviving children of any of Mary A. Emery's children who had died in her lifetime; that the trustees are required to account to the plaintiffs in error for one-fourth of the proceeds, income and profits received from the trust estate on the first day of January and July of each year subsequent

to the death of John T. Emery, and to convey to the plain-
tiffs in error one-fourth of the real estate remaining un-
sold on the first day of January, 1925?

*Reversed and remanded, with directions.*

Mr. JUSTICE HEARD, dissenting.